# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| RANDY BETZ, RAFAEL CAJIGAS, and KEVIN DUNN Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br><br>AMERICOLLECT INC. and ERMED S.C.,<br><br>Defendant. | Case No.: 18-cv-79<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Randy Betz ("Betz") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Rafael Cajigas ("Cajigas") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Plaintiff Kevin Dunn is an individual who resides in Milwaukee County, Wisconsin.

6. Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

7. Each plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), Wis. Stats., in that he allegedly engaged in a transaction for personal, family, or household purposes, namely medical services, where there was an agreement to defer payment.

8. Defendant Americollect, Inc., ("Americollect") is a debt collection agency with its principal place of business located at 1851 S Alverno Rd., Manitowoc, Wisconsin 54220.

9. Americollect is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. Americollect is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

11. Americollect is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

12. Americollect is a debt collector as defined in 15 U.S.C. § 1692a. and Wis. Stat. § 427.103(3).

13. Defendant Ermed, S.C. ("Ermed") is a domestic service close corporation with its principal office at 2900 West Oklahoma Avenue, Milwaukee, Wisconsin 53215.

14. Ermed is a debt collector as that term is defined in Wis. Stat. § 427.103.

15. Ermed routinely conducts debt collection activities with respect to debts owed by Wisconsin citizens.

16. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

2

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

17. On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

18. Wis. Stat § 427.103(2) states: "'Debt collection' means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

19. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

20. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

## FACTS

### *Facts Relating to Plaintiff Betz*

### *Americollect's November 15, 2016 Letter*

21. On or about November 15, 2016, Americollect mailed a debt collection letter to Betz regarding an alleged debt, allegedly owed to Ermed. A copy of this letter is attached as Exhibit A.

3

22. The alleged debts identified in Exhibit A were medical debts and, thus, incurred for personal, household and family purposes.

23. Betz was not required to pay for the medical services at the time services were rendered. Instead, Ermed mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

24. Upon information and belief, Exhibit A was the first letter Americollect sent Betz regarding the alleged debts to which the letter refers.

25. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Betz inserted by computer.

26. Upon information and belief, Exhibit A is a form debt collection letter used by Americollect to attempt to collect alleged debts.

27. Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires debt collectors to mail alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice, that you dispute the validity of this debt or any portion thereof this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

28. Exhibit A also contains the following:

4

Case 2:18-cv-00079-NJ    Filed 01/16/18    Page 4 of 26    Document 1

| CREDITOR NAME | ACCOUNT # | PRINCIPAL | INTEREST | LAST ACTIVITY DATE | BALANCE |
|---|---|---|---|---|---|
| ERMED S.C. | ▮0411 | $26.81 | $0.00 | 06/03/2016 | $26.81 |

TOTAL: $26.81

Exhibit A.

29.     Exhibit A states that Americollect was attempting to collect on behalf of Ermed, and that the debt was incurred for medical services provided on June 6, 2016, associated with an account ending in 0411, and in an amount of $26.81.

30.     Exhibit A also contains the following:

The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid. In the event your payment is returned to us NSF, we may represent your check electronically.

Exhibit A.

31.     Exhibit A states that, as of November 15, 2016, the balance of the debt was $26.81 but threatens that "Future interest of 5% per year may be added to the account if the amount due is not paid."

32.     Exhibit A also contains the following:

**We accept checks over the phone or pay by credit card to protect your good credit!**

Exhibit A.

33.     The unsophisticated consumer would understand the reference to "protect[ing] your good credit!" to mean that Americollect was threatening to report the outstanding debt to credit reporting agencies.

### *Ermed's April 3, 2017 Statement*

34.     On or about April 3, 2017, Ermed mailed Betz an account statement regarding an alleged debt, allegedly owed to Ermed. A copy of this account statement is attached to this complaint as Exhibit B.

5

35.    Exhibit B states the following:

| Patient: | RANDY L. BETZ | | Site of Service: | ST LUKES SOUTHSHORE HOSPITA | Primary: | | BLUE SHIELD OF WISC |
|---|---|---|---|---|---|---|---|
| Account: | ▒0411 | | Refer Prov: | | Secondary: | | |

| Service Dt. | Provider | Service Description | Qty | Charges | Payments | Adjustments | You Owe |
|---|---|---|---|---|---|---|---|
| 06/03/16 | JASON TOMASELLO, MD | ███████████████ | 1.00 | 403.00 | | | |
| 06/03/16 | JASON TOMASELLO, MD | ███████████████ | 1.00 | 332.00 | | | |
| 07/13/16 | | BLUE SHIELD OF WISCONSIN | | | -241.26 | 241.26 | |
| | | Amount You Owe | | | | | 708.19 |

Exhibit B.

36.    Exhibit B states that Ermed was attempting to collect a debt incurred for medical services provided on June 3, 2016, associated with an account ending in 0411, and in an amount of $708.19.

37.    Exhibit B was attempting to collect a debt for medical services owed to the same provider, incurred on the same day, and associated with same account number as the debt Americollect was attempting to collect in Exhibit A.

38.    Upon information and belief, Exhibits A and B were attempting to collect the same debt.

39.    Exhibit A, mailed on November 15, 2016, attempted to collect this account's debt in the amount of $26.81 whereas Exhibit B attempted to collect this account's debt in the amount of $708.19.

40.    Exhibit B also states:

## Summary of Account

| | |
|---|---|
| Total Charges | $ 735.00 |
| Insurance Payments | - $ 241.26 |
| Insurance Adjustments | $ 241.26 |
| Patient Payments | $ 0.00 |
| Account Adjustments | $ 0.00 |
| **AMOUNT DUE** | **$ 708.19** |

Exhibit B.

6

41.    Exhibit B states that the "Total Charges" for the medical services provided on June 3, 2016 were valued at $735.00.

42.    Exhibit B further states that, on July 13, 2016, "Insurance Payments" in the amount of $241.26 and "Insurance Adjustments" in the amount of $241.26 were applied to the account.

43.    Although these payments and upward adjustments are in equal amounts and the net effect would be zero, and there were no further adjustments or interest added to the account between July 13, 2016 and April 3, 2017, the debt Ermed attempted to collect was $708.19, not $735.00.

### Ermed's April 12, 2017 Account Statement

44.    On or about April 12, 2017, Ermed mailed Betz an account statement regarding an alleged debt, allegedly owed to Ermed.  A copy of this account statement is attached to this complaint as Exhibit C.

45.    Exhibit C states the following:

| Patient: RANDY L. BETZ | | Site of Service: ST LUKES SOUTHSHORE HOSPITA | | Primary: | | BLUE SHIELD OF WISC | |
|---|---|---|---|---|---|---|---|
| Account: ▮▮▮▮0411 | | Refer Prov: | | Secondary: | | | |
| Service Dt. | Provider | Service Description | Qty | Charges | Payments | Adjustments | You Owe |
| 06/03/16 | JASON TOMASELLO, MD | ▮▮▮▮▮▮▮▮▮▮▮ | 1.00 | 403.00 | | | |
| 06/03/16 | JASON TOMASELLO, MD | ▮▮▮▮▮▮▮▮▮▮▮ | 1.00 | 332.00 | | | |
| 07/13/16 | | BLUE SHIELD OF WISCONSIN | | | 0.00 | 241.26 | |
| | | Amount You Owe | | | | | 949.45 |

Exhibit C.

46.    Exhibit C states that Ermed was attempting to collect a debt incurred for medical services provided on June 3, 2016, associated with an account ending in 0411, and in an amount of $949.45.

47.    Exhibit C was attempting to collect a debt for medical services owed to the same provider, incurred on the same day, and associated with same account number as the debts Exhibits A and B were attempting to collect.

7

48. Upon information and belief, Exhibits A, B, and C were attempting to collect the same debt.

49. Exhibit A attempted to collect a debt in the amount of $26.81, Exhibit B attempted to collect a debt in the amount of $708.19, and Exhibit C attempted to collect $949.45.

50. Exhibit C also states:

**Summary of Account**

| | |
|---|---|
| Total Charges | $ 735.00 |
| Insurance Payments | $ 0.00 |
| Insurance Adjustments | $ 241.26 |
| Patient Payments | $ 0.00 |
| Account Adjustments | $ 0.00 |
| **AMOUNT DUE** | **$ 949.45** |

Exhibit C.

51. Exhibit C states that the "Total Charges" for the medical services provided on June 3, 2016 were valued at $735.00.

52. Exhibit C further states that, on July 13, 2016, "Insurance Payments" in the amount of $0.00 and "Insurance Adjustments" in the amount of $241.26 were applied to the account.

53. The information provided in Exhibit C conflicts with the information provided in Exhibit B. Exhibit B states that the insurance payments and adjustments should have offset each other, whereas Exhibit C states that there were no insurance payments at all.

54. Moreover, if the "Total Charges" for the medical services were $735.00 and there were upward "insurance adjustments" in the amount of $241.26, and no other adjustments or credits to the account, the "AMOUNT DUE" would not be $949.45.

55. Moreover, upon information and belief, if the "Total Charges" for the medical services were $735.00, the amount due would not be greater because the recipient of the medical

8

services was insured.  The purpose of insurance is to reduce, rather than increase, out-of-pocket costs.

56.     Moreover, although Exhibit A threatens that "Future interest of 5% per year may be added to the account if the amount due is not paid," neither of Exhibit B, nor Exhibit C attempts to add interest to the account.

57.     Betz was confused as to how much he was supposed to pay.

58.     Betz was confused as to whether Americollect, or Ermed, was reporting this debt and to credit reporting agencies, and if so, in what amount.

59.     Betz was deceived, misled, and confused by Exhibits B and C, especially when referencing Exhibits B and C with Exhibit A.

60.     The unsophisticated consumer would be deceived, misled, and confused by Exhibits B and C, especially when referencing Exhibits B and C with Exhibit A.

*Facts Relating to Plaintiff Cajigas*

*Aurora's June 15, 2017 Account Statement*

61.     Throughout March, 2017, Cajigas obtained medical services through the AHCM South Shore Rehabilitation Center.  The provider of medical services and creditor of Cajigas' account was Aurora Health Care ("Aurora").

62.     On or about June 15, 2017, Aurora mailed an account statement to Cajigas, regarding an alleged debt, allegedly owed to Aurora.  A copy of this account statement is attached to this complaint as Exhibit D.

63.     Exhibit D contains the following:

9

Patient Name: CAJIGAS,RAFAEL A
01/24/17 to 01/28/17 ████ 6890

Location: AHCM South Shore 3rd floor Inpatient Medical Surgical

Balance Forward
Patient Balance

80,199.53   -78,883.53   $1,316.00
                          $1,316.00

Exhibit D.

64.     Exhibit D states that Aurora's account ending 6890 is associated with medical services incurred between January 24, 2017 and January 28, 2017, with a total cost of $80,199.53 and for which insurance payments and adjustments had been applied in an amount of $78.883.53.

65.     Exhibit D further states that Cajigas owed a total of $1,316.00 for medical services incurred between January 24, 2017 and January 28, 2017, and associated with the account ending in 6890.

66.     Exhibit D also contains the following:

Patient Name: CAJIGAS,RAFAEL A
01/24/17 to 01/28/17 ████ 9926

Provider: NORD, STEPHEN L
Location: AURORA ST LUKES SOUTH SHORE - OP

Balance Forward
Patient Balance

32,995.50   -32,693.46   $302.04
                          $302.04

Exhibit D.

67.     Exhibit D states that Aurora's account ending 9926 is associated with medical services incurred between January 24, 2017 and January 28, 2017, with a total cost of $32,995.50 and for which insurance payments and adjustments had been applied in an amount of $32,693.46.

68.     Exhibit D further states that Cajigas owed a total of $302.04 for medical services incurred between January 24, 2017 and January 28, 2017, and associated with the account ending in 9926.

10

69.     Exhibit D also contains the following:

| Patient Name: CAJIGAS,RAFAEL A | | | | |
|---|---|---|---|---|
| 03/02/17 to 03/31/17 ██████4570 | | Location: AHCM South Shore Aurora Rehabilitation Center | | |
| Balance Forward Patient Balance | | 2,080.00 | -1,993.50 | $86.50 $86.50 |

Exhibit D.

70.     Exhibit D states that Aurora's account ending 4570 is associated with medical services incurred between March 2, 2017 and March 31, 2017, with a total cost of $2,080.00 and for which insurance payments and adjustments had been applied in an amount of $1,993.50.

71.     Exhibit D further states that Cajigas owed a total of $86.50 for medical services incurred between March 2, 2017 and March 31, 2017, and associated with the account ending in 4570.

*Americollect's August 9, 2017 Letter*

72.     On or about August 9, 2017, Americollect mailed a debt collection letter to Cajigas regarding an alleged debt, allegedly owed to "AURORA ST LUKES SOUTH SHORE" ("Aurora").  A copy of this letter is attached as Exhibit E.

73.     The alleged debt identified in Exhibit E was a medical debt and, thus, incurred for personal, household and family purposes.

74.     Cajigas was not required to pay for the medical services at the time services were rendered. Instead, Aurora mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

11

75. Upon information and belief, Exhibit E was the first letter Americollect sent Cajigas regarding the alleged debts to which the letter refers.

76. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Cajigas inserted by computer.

77. Upon information and belief, Exhibit E is a form debt collection letter used by Americollect to attempt to collect alleged debts.

78. Exhibit E contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires debt collectors to mail alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit E.

79. Exhibit E also contains the following:

| CREDITOR NAME | ACCOUNT NUMBER | LAST ACTIVITY DATE | BALANCE |
|---|---|---|---|
| AURORA HEALTH CARE LAKESHORE MEDICAL CLINIC OHIO | 9926 | 01/24/2017 | $302.04 |
| AURORA HEALTH CARE AURORA ST LUKES SOUTH SHORE | 4570 | 03/02/2017 | $86.50 |

Exhibit E.

80. Exhibit E is false, deceptive, misleading, and confusing to the unsophisticated consumer.

81. Exhibit E attempts to collect the debts described above, associated with accounts ending in 9926 and 4570.

82. Exhibit E states that the "Last Activity Date" for the account ending in 9926 was January 24, 2017, and that the balance of this account is $302.04.

12

83. The unsophisticated consumer would recognize the January 24, 2017 date as a date he received medical services from Aurora but would be confused as to whether the balance, $302.04, covered all of the services associated with the account or only covered the services provided on January 24, 2017.

84. The balance Americollect attempted to collect, $302.04, was about 1% of the total costs associated with the account ending in 9926, and less than 0.3% of the total costs of services Aurora provided between January 24, 2017 and January 28, 2017.

85. Exhibit E states that the "Last Activity Date" for the account ending in 4570 was March 2, 2017, and that the balance of this account is $86.50.

86. The unsophisticated consumer would recognize the March 2, 2017 date as a date he received medical services from Aurora but would be confused as to whether the balance, $86.50, covered all of the services associated with the account or only covered the services provided on March 2, 2017.

87. The balance Americollect attempted to collect, $86.50, was about 4%, of the total costs incurred between March 2, 2017 and March 31, 2017 associated with the account ending in 4570.

88. Exhibit E uses the phrase "Last Activity Date" in a false, deceptive, misleading, and confusing way.

89. The unsophisticated consumer would understand "Last Activity Date" to mean the date of last account activity, not the date medical services were provided. *See, eg. Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938 (7th Cir. 2007) ("Equifax lists the date of the consumer's last activity for the reported account in the Date of Last Activity field. If the account is delinquent, with no subsequent activity, then the Date of Last Activity reflects the date of

13

delinquency. If the consumer has been paying the account, the Date of Last Activity reflects the last payment. In the case of a previously delinquent account in which the consumer has started to make subsequent payments, the last payment by the consumer replaces the delinquency date in the Date of Last Activity field.")

90. Even assuming the unsophisticated consumer would understand "Last Activity Date" to refer to a date of service, rather than date of account activity, the unsophisticated consumer would understand "Last Activity Date" to mean the last date medical services were provided.

91. Upon information and belief, the information Americollect provides in its letters in the field "Last Activity Date" is actually the date medical services associated with the account were first provided.

92. The unsophisticated consumer is not expected to consult prior account statements to resolve the confusion inherent in Americollect's false, deceptive, misleading, and confusing choice of language, *i.e.,* "Last Activity Date." *See Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (the fact that a debtor can refer to prior communications from a creditor to resolve confusion resulting from a debt collector's misleading statements does not render the debt collector's misleading statements immaterial).

93. Cajigas was deceived, misled, and confused by Exhibit E.

94. The unsophisticated consumer would be confused by Exhibit E.

### *Facts relating to Plaintiff Dunn*

95. On or around February 10, 2017, Americollect mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "FROEDTERT-MEMORIAL-

14

LUTHERAN-HOSPITAL" ("Froedtert"). A copy of this letter is attached to this complaint as Exhibit F.

96.    The alleged debt identified in Exhibit F was for alleged medical services.

97.    The alleged debt identified in Exhibit F was allegedly owed to Froedtert and was incurred only for personal, family or household purposes.

98.    The debt referenced in Exhibit F was incurred for personal medical services.

99.    Dunn was not required to pay for the medical services at the time services were rendered. Instead, Froedtert mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

100.   Upon information and belief, Exhibit F is a form letter, generated by a computer, and with the information specific to Dunn inserted by the computer.

101.   Upon information and belief, Exhibit F is a form debt collection letter used by Americollect to attempt to collect alleged debts.

102.   Exhibit F represents the balance allegedly owed to Froedtert as $1,404.95.

103.   Exhibit F contains the following text:

We have been given the opportunity to offer you a **discount of 25%** on the above account. If you have your payment in our office by 07/31/2017 your amount due to FROEDTERT-MEMORIAL-LUTHERAN-HOSP is $1,053.71. We are not obligated to renew this offer.

Exhibit F.

104.   The statements above are confusing and misleading to the unsophisticated consumer. Such broad, open-ended language is inherently confusing to the consumer and an unfair collection practice.

15

105. Exhibit F states that if payment is sent to the office "by 07/31/2017" the amount due is $1,053.71.

106. Exhibit F gives no explanation as to how a payment of less than $1,053.71 sent to Americollect's office on or before 07/31/2017 would be treated. It is not unusual for consumers to make payments of nominal amounts, sometimes $20 or $50 or less, to medical providers because that is all the consumer can afford to pay.

107. Americollect's language leaves open the possibility that the consumer will make a payment for less than $1,053.71 on or before 07/31/2017 and not know if the payment was credited against the full balance or against the settlement amount.

108. The consumer then would not know if he or she owed the difference between the settlement amount less the payment made or the total balance due less the payment made.

109. If the consumer mistakenly believed that the amount remaining was the settlement amount less the payment made and paid the difference at some future point, Americollect or the creditor could continue to collect on the remaining total balance.

110. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to the confusing language in Exhibit A, however, Americollect could continue to collect the remaining balance of the alleged debt, despite receiving payment(s) the consumer believed to be settlement payment(s).

111. Dunn was deceived, misled, and confused by Exhibit F.

112. The unsophisticated consumer would be confused by Exhibit F.

16

*The FDCPA*

113.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive*

17

*Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs,* No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

114.   Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

115.   15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

116.   15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

117.   15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

118.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

119.    15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

120.    15 U.S.C. § 1692f(1) specifically prohibits: "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

121.    15 U.S.C. § 1692g states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt.

15 U.S.C. § 1692g (emphasis added).

### *The WCA*

122.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

123.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

19

124.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

125.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

126.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

127.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]."  Wis. Stat. § 421.106(1).

128.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

129.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell*

20

*Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

130. The policies and procedures of licensed collection agencies are governed, in part, by Wis. Admin. Code Ch. DFI-Bkg 74 ("Collection Agencies").

131. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

132. Wis. Stat. § 427.104(1)(g) specifically prohibits a debt collector from: "Communicat[ing] with the customer or a person related to the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

133. Wis. Stat. § 427.104(1)(h) specifically prohibits a debt collector from: "Engag[ing] in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."

134. Wis. Stat. § 427.104(1)(j) specifically prohibits a debt collector from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist."

### COUNT I -- FDCPA

135. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

136. Count I is brought on behalf of Betz and against Americollect.

137.   Exhibit A contains false, deceptive, misleading, confusing, and unconscionable statements.

138.   The balance stated in Exhibit A conflicts with the balance stated in account statements sent by the creditor. Exhibits B and C.

139.   Americollect misstated the balance.

140.   Americollect failed to state the balance is a non-confusing manner.

141.   Americollect threatened to add interest to the account when Ermed did not intend to do so with respect to Betz' debt.

142.   Americollect threatened to report an inaccurate balance to consumer reporting agencies.

143.   Americollect violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, and 1692g.

### COUNT II -- FDCPA

144.   Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

145.   Count II is brought on behalf of Cajigas and against Americollect.

146.   The representation of the "Last Activity Date" in Exhibit E is a false, deceptive, misleading, and confusing statement.

147.   Americollect uses the phrase "Last Activity Date" to mean the first date that medical services were provided.

148.   The unsophisticated consumer would be deceived, misled, and confused by the use of the phrase "Last Activity Date" to mean the first date medical services were provided.

149.   Americollect violated 15 U.S.C. §§ 1692e and 1692e(10).

<h3 style="text-align:center">COUNT III -- FDCPA</h3>

150. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

151. Count III is brought on behalf of Dunn and against Americollect.

152. Exhibit A includes an offer that is misleading as to the amount necessary to effectuate the settlement and when the offer may expire.

153. A consumer who mails a "settlement" payment to the address listed on the letter for less than the full amount of the settlement would not know if the payment was credited against the full balance or the settlement amount.

154. Americollect violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

<h3 style="text-align:center">COUNT IV -- WCA</h3>

155. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

156. Count IV is brought on behalf of Betz and against Americollect and Ermed.

157. The conflicting statements in Exhibits A-C are false, deceptive, misleading, confusing, and unconscionable means of attempting to collect a debt.

158. The unsophisticated consumer would be deceived, misled, and confused by the conflicting balances and threats to add interest stated in Exhibits A-C.

159. The unsophisticated consumer would be deceived, misled, and confused by Ermed's billing practices, which include using "insurance adjustments" to increase the balance the consumer purportedly owes and attempting to collect an "Amount Due" that is not the actual sum of the charges, adjustments, and credits to the account.

160. The unsophisticated consumer would be deceived, misled, and confused by Americollect's false threats that the account would be subject to interest.

161. Americollect and Ermed violated Wis. Stat. § 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

**CLASS ALLEGATIONS**

162. Plaintiffs bring this action on behalf of three Classes.

163. Class I ("Ermed Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt allegedly owed to Ermed, (d) incurred for personal, family or household purposes, (e) between January 16, 2017 and January 16, 2018, inclusive, (f) that was not returned by the postal service. Plaintiff Betz is the named representative for Class I.

164. Class II ("Multiple Service Date Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit E to the complaint in this action, (c) seeking to collect a debt allegedly incurred for medical services provided on more than one day, (d) incurred for personal, family or household purposes, (e) between January 16, 2017 and January 16, 2018, inclusive, (f) that was not returned by the postal service. Plaintiff Cajigas is the named representative for Class II.

165. Class III ("Confusing Settlement Offer Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit F to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 16, 2017 and January 16, 2018, inclusive, (e) that was not returned by the postal service.

24

166. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

167. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual Class members. The predominant common questions are whether Exhibits A, B, C, E and/or F violate the FDCPA and/or WCA.

168. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

169. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

170. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

171. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated: January 16, 2018

25

**ADEMI & O'REILLY, LLP**

By:  /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

26